It appeared that plaintiff was a brakeman in defendant's employ; that at night he was standing on the rear end of a freight car in a train, preparing to uncouple it from the car behind it; that the train was still or nearly still at the time; that the conductor had, without plaintiff's knowledge, uncoupled the cars; and that, while plaintiff was thus preparing to uncouple the cars, the engineer, in response to signals by the conductor, suddenly started the car plaintiff was on, and those in front of it, throwing plaintiff to the ground and injuring him.
The issues and responses are as follows:
"1. Was the injury complained of caused by the negligence of the defendant? Answer: `Yes.'
"2. Did the plaintiff by his own negligence contribute to the injury complained of? Answer: `No.'
"3. What damage, if any, has the plaintiff sustained by the injury so complained of? Answer: `Fourteen hundred and ninety dollars.'"
The defendant asked the following instructions:
"1. That if the jury shall believe that the conductor was accustomed to uncouple cars and signal the engineer forward, and such duty was also performed by the brakemen, and that the conductor on this occasion, *Page 458 
desiring to set off a car, uncoupled it and signaled the engineer forward in the performance of this duty, he was a fellow-servant of the brakeman on top of the car."
(The judge refused to give the instruction except as contained (730) in the charge as given, and for such failure the defendant excepted and alleges the same as error.)
"2. If a brakeman on top of a car knew that there was to be a shifting of cars, and was about to go to the end of a car to see if it was an airbrake car, and the conductor uncoupled the car and signaled it forward, it was not negligence on the part of the company that the conductor did not notify the brakeman."
(The judge refused to give this instruction except as contained in the charge, and for failure defendant excepted and assigned error.)
"3. Upon all the evidence in this case the plaintiff is not entitled to a verdict upon the first issue."
(The judge refused to give the instruction, and for this refusal the defendant excepted and assigned error.)
His Honor charged the jury as follows:
"This is a civil action brought by the plaintiff against the defendant for alleged negligence on the part of the defendant, and by which plaintiff claims his foot and leg have been broken and he has suffered damage which he now seeks to recover. There are three issues submitted for the decision of the jury: The first issue is addressed to the conduct of the defendant. Was the injury caused by the defendant's negligence? The second is addressed to the conduct of the plaintiff. Did the plaintiff by his own negligence contribute to the injury? The law being that, though the defendant may have been negligent and so caused the injury complained of, yet plaintiff cannot recover if he has himself been negligent, and by his own negligent conduct contributed to the injury. The third issue is addressed to the question of damage. What damage has plaintiff suffered? This is to be decided by the jury, only in case a finding (731) on the first two issues should make a response to this issue necessary.
"On the first issue the burden is on the plaintiff to show by the greater weight of evidence that the defendant has been negligent; and the responsibility of the defendant on this issue is to be determined by the conduct of the conductor of the train, where he acts for the company, his employer, in the control and management of the train as conductor. No responsibility can attach to defendant company by reason of any misconduct or malpractice on the part of the surgeon who attended plaintiff, even if such malpractice occurred. The only duty attaching to defendant in this respect would be that if the company undertook to employ a physician for the purpose, they must use due care and select *Page 459 
one of known or approved skill. The plaintiff having admitted in open court that the defendant had selected and employed a physician of that character, the defendant has in that respect performed its full duty. The defendants are not insurers of the physician's treatment, and no responsibility can or does attach to defendant for any alleged misconduct of the physician, either on this issue or the issue of damage, should a finding on that issue become necessary.
"Nor is defendant company responsible for any act or misconduct on the part of the engineer. Even if the train started forward by an unusual jerk and in an unusual and negligent manner in starting the engine by the conduct of the engineer of defendant company, the defendant company is not responsible. The engineer was a fellow-servant, and where the injury occurs by the act of a fellow-servant the law forbids a recovery. It would destroy or seriously restrict all employment of labor if a master or employer could be held responsible for the negligent acts of their laborers towards each other, where the employer was not (732) present and which he did not command or direct.
"Nor would the defendant company be responsible on this issue if it was one of the ordinary duties of brakemen to uncouple and start the trains, and the conductor in this instance in uncoupling and starting the train was simply performing the act of a brakeman, for in performing such acts and duties he is considered as a fellow-servant, and for negligence in such acts the company is not responsible to its other employees.
"It is only when the act complained of is negligent and done in the discharge of his duties as a conductor that the act is considered that of the employer and for which the employer becomes liable. If this train was at the time wrongfully and negligently uncoupled and started forward by the conductor, acting as conductor and manager of the train in the capacity of conductor, and plaintiff was then injured, the defendant would be responsible.
"And in that case, if it was not in the usual line of a conductor's business to uncouple these cars, but was in the usual line of plaintiff's duties, and the conductor knowing this, and knowing that the plaintiff was then on the top of the car from which he uncoupled the rear portion of the train, and in a position where a sudden and unexpected starting of the car was likely to cause him an injury, and in discharging his duties as conductor, then and there directed the train to start forward without any warning to plaintiff, and so caused plaintiff's injury, he would be guilty of negligence. The failure of the conductor to give the warning and causing the train to start under such circumstances would be negligence for which the defendant company would be responsible, and the jury in that event should answer the first issue `Yes.' *Page 460 
"If it was in the usual line of the conductor's duties to uncouple that train, or the conductor didn't know that the plaintiff was at the (733) time in a position to render an injury probable, or if the conductor in uncoupling and starting the train was then in the performance of the ordinary duties of a brakeman, in either event the defendant would not be responsible and the jury should answer the first issue `No.'"
The court here referred to the evidence of plaintiff and defendant, which is deemed pertinent on the issue, and then further charged the jury:
"If the jury answer the first issue `No' they need not consider the other issues; but if the first issue is answered `Yes' the jury shall further consider the evidence, and under the charge of the court respond to the second issue.
"This issue is addressed to the conduct of the plaintiff. As heretofore stated, although the defendant is negligent, the plaintiff cannot recover if his own negligent conduct contributed to the injury. He occupied the position of brakeman, whose duties required him to be frequently on top of trains, and it was proved and admitted to be a place of danger. In accepting such a place, he assumed the duties incident to a place of that kind. It further became his duty to defendant to be alert, and use his faculties for his own safety and protection, and observe the care that a prudent man would use in a dangerous position of that kind, and if the plaintiff failed to use that degree of care which his position and the circumstances required, and in that way contributed to his own injury, he cannot recover.
"If the plaintiff knew the conductor was in the habit of uncoupling cars, or that he was then about to do so, or that he or any other train hand might do so at any moment, it was his duty to guard against that, and take such a position as would insure his own safety; and if he failed in this, and thereby caused his own injury, or helped to do it, the plaintiff cannot recover, and the jury should answer the second issue (734) `Yes.' Or, if the plaintiff took a position that was dangerous, and which was not required by the proper performance of his duties, and was thereby injured, he would be barred of recovery, and the issue should be answered `Yes.'
"But if the plaintiff was in a prudent position, doing what his duties required, and in the proper discharge of them, and was hurt by the negligent starting of the car by the conductor, when he thought and had every reason to believe the conductor was forward or at a different place, there would, in that case, be no negligence on the part of the plaintiff, and the jury should answer the second issue `No.'"
The court here recited the evidence deemed pertinent, and then further charged the jury: *Page 461 
"If the jury answer the first issue `No' or the second issue `Yes,' they must not respond to the third issue. But if the first issue be answered `Yes' and the second issue `No,' that is, if the jury find the defendant was negligent, causing the injury, and the plaintiff did not by his own negligence contribute to the injury, then the jury will further consider the evidence and respond to the third issue, which is on the question of damages. What damage has plaintiff suffered by reason of defendant's negligence?
"And on this the jury will award to the plaintiff what, in their judgment, is a fair compensation for the injury which is directly attributed to the negligent act of the defendant.
"The jury will not allow anything for damages which is traceable to any malpractice or bad advice or bad treatment on the part of the physician, nor for any additional damages which arose from plaintiff's own imprudence, nor for any such damages which may have occurred from neglecting directions of or disobeying the doctor, nor even for his failure to send for a physician in time, after he was removed to (735) his own home, and when ordinary prudence would have suggested that another physician should be sent for. The defendant is only responsible for damages arising from and traceable to its own negligent conduct. And applying the rule, the court excluding the consideration of these other matters, the jury can award such damages as they decide to be proper, allowing for plaintiff's loss of time, his pain and suffering, etc. They cannot exceed the amount demanded ($1,990), and may give as much smaller sum as they deem right."
The defendant excepted to the charge as given, and assigned as error:
"That his Honor charged that if it was in the usual line of the plaintiff's, that is, a brakeman's duties, to uncouple cars, and the conductor uncoupled them and signaled the train forward, the company would be liable, whereas he had previously charged that if he (the conductor) was performing the duties of a brakeman in such acts, the company would not be liable.
"For that his Honor charged that it was the duty of the conductor to notify the plaintiff that he was about to uncouple the cars and signal the train forward.
"In that his Honor left it to the jury to say whether the plaintiff knew that the conductor or any train hand might uncouple the cars at any moment, when all the evidence was to the effect that he had such knowledge, and there was no evidence that the plaintiff did not know that the conductor or any trainman might uncouple the cars at any moment; and that his Honor should have charged that, as plaintiff knew that the conductor sometimes uncoupled the cars, or that he or any other *Page 462 
train hand might uncouple them at any moment, it was his duty to guard against it and to take such a position as would insure his own safety. "For that the charge is inconsistent in itself and calculated to (736) mislead in reference to alleging the duties of a conductor and of a brakeman in regard to uncoupling cars and acts connected with it."
A verdict was rendered as above set forth, and defendant appealed from the judgment thereon.
Within a few minutes, not exceeding twelve or fifteen, after the rendition of the verdict the court adjourned for the term. The counsel for the defendant, within two hours and a half after the adjournment of the court, learned of certain conduct of the jury in reaching their verdict, and filed the following affidavit:
"F.H. Busbee, being duly sworn, saith that within a very short time after the rendition of a verdict in the above entitled cause, and before it was possible to make any investigation into the conduct of the jury, the court adjourned; that since the adjournment affiant has learned and avers, upon reliable information and belief, that the verdict of the jury in the above-mentioned case was reached by an agreement that each juror should name the amount of the verdict in his opinion proper to be rendered, and add the amount up and divide the amount by 12, and that the verdict was reached in this manner.
"That affiant is attorney for the defendant; that it was not possible to make this motion during the few minutes which elapsed between the rendition of the verdict and the adjournment of the court.
"F.H. BUSBEE.
"Sworn and subscribed to before me, this 30 July, 1896.
 "W. A. HOKE, "Judge Superior Court."
This affidavit was presented to the judge of the court immediately after he reached Reidsville, the station on the railroad, on 30 July, and early the following morning was communicated to the counsel for (737) the plaintiff, and the defendant's counsel offered to make full proof of the action of the jury if an opportunity should be afforded him.
The plaintiff's counsel objected on the ground that a motion for a new trial upon the ground of the misconduct of the jury cannot be made after the adjournment of the court.
His Honor found as a fact that defendant's counsel had not learned of the action of the jury until after the adjournment of the court for the term, and that he had no opportunity to make the motion pending the term of the court, and that the court adjourned almost immediately upon *Page 463 
the rendition of the verdict. He further found that the defendant's counsel had received the information stated in his affidavit in good faith, and believed the same, but that under the law he could not entertain the motion, or permit the defendant to make further proof thereof if required, and he therefore declined to consider the motion after the adjournment of the court for the term.
The defendant excepted and appealed.
The conductor, while in charge of an independent train, was a vice-principal, and his acts were in contemplation of law the acts of the railway company. Mason v. Railway, 111 N.C. 482; Turner v.Lumber Company, ante, 387. Strangers are warranted in assuming that the servants of a railway company will discharge their respective duties, and are not negligent in acting on that assumption. Tillett v. R. R.,118 N.C. 1031, at page 1045. The servants themselves have the right to expect and demand that reasonable care be exercised (738) by the company in providing for their protection. Mason v.R. R., supra; Chesson v. Lumber Company, 118 N.C. 59. The conductor, who was the embodiment of the authority of the company, was negligent in ordering any movement of the train without warning to the plaintiff, if he had reasonable ground to apprehend that without such caution the plaintiff acting within the scope of his ordinary duties, might be subjected to danger from such movement. Little v. R. R.,118 N.C. 1072; Blue v. R. R., 116 N.C. 955; Emry v. R. R., 102 N.C. 209
and 234; Tillett v. R. R., 118 N.C. 1031; Turner v. Lumber Company,supra.
Though there is conflict in the testimony as to the question whether the conductor was in the habit of taking the place of the brakeman by uncoupling cars, it was not disputed that it was a duty which the brakeman was accustomed to perform, and which he was justified in assuming devolved upon him when he was injured. The plaintiff was not negligent in preparing in the usual way to uncouple the cars, and in subjecting himself only to such danger as he knew to be incident to discharging that duty. If the conductor knew that the plaintiff usually descended from the top of the cars for that purpose, and in doing so necessarily placed himself in a perilous position, he was culpable, if he anticipated his subordinate, and without warning to him or in any way looking to his safety ordered the car to be moved suddenly forward, and by such carelessness he subjected the company to liability for any damage that might have reasonably been expected to ensue from his omission to give such warning, and that might have been averted by giving it. *Page 464 
Acting under the instruction given by the Court, the jury (739) must have found from the testimony that it was not in the usual line of the conductor's but was in the usual line of the plaintiff's duty to uncouple the cars, and that the conductor, knowing that a sudden and unexpected starting of the train without notice to the plaintiff would probably endanger his safety, ordered it to be moved without giving warning to him. The defendant had no cause to complain of the instruction of the Court that the conductor could change his own relation to the company from that of alter ego to that of a fellow-servant of a brakeman by volunteering to anticipate the plaintiff in the performance of his ordinary duty. If the conductor had ordered the fireman to do an act which might reasonably have been expected to endanger the brakeman, and which did result in injury to him, the company would have been answerable for the natural consequences of his order. It would be unreasonable to hold that, by doing the careless act himself instead of ordering another who felt constrained to obey to do it, he relieved the company of responsibility. Qui facet per alium facit per se
is the maxim which applies where, as vice-principal, he compels another to do what is culpable. It would be illogical to say that, where he directs or orders, he utters the command of the company and adopts for it the act of the employee who obeys, and yet when he does the act in proper person he descends from the role of vice-principal to that of servant.
The evidence of a juror cannot be heard to impeach his own verdict by showing how the damage was assessed. Johnson v. Allen, 101 N.C. 137;Jones v. Parker, 97 N.C. 33; S. v. Royal, 90 N.C. 755. There was, therefore, no error in refusing to grant a new trial upon the affidavit setting forth information derived from jurors as to what (740) occurred in their own private consultations. The truth of the allegation could not have been shown except by allowing one of the jurors to become a witness, and this the policy of the law will not permit.
NO ERROR.
Cited: Pleasants v. R. R., 121 N.C. 495. *Page 465