GENIE NEWTON, ADMINISTRATRIX, v. LEON S. BRASSFIELD AND W. B. DRAKE, RECEIVERS, ET AL.

(Filed 26 March, 1930.)

1. **Highways B g—Evidence of intestate's contributory negligence in running in front of bus held sufficient.**

   Evidence in this case that the plaintiff's intestate suddenly ran in front of and was killed by the defendant company's bus is held sufficient to sustain an affirmative answer to the issue of contributory negligence and bar a recovery in an action for wrongful death.

2. **Appeal and Error J e—Assignments of error on issue answered in appellant's favor will not be sustained.**

   Assignments of error arising on an issue found in the appellant's favor will not be sustained on appeal.

3. **Trial G d—Jurors will not be heard to impeach their own verdict.**

   Jurors will not be heard to impeach a verdict after it has been rendered to and received by the court.

APPEAL by plaintiff from *Harwood, Special Judge,* and a jury, at Special November Term, 1929, of WAKE. No error.

This is an action for actionable negligence brought by plaintiff against the defendants for damages for killing her intestate. The defendants denied negligence and set up the plea of contributory negligence.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff's intestate, Charles T. Newton, injured and killed by the negligence of the defendants as alleged in the complaint? Answer: Yes.

2. Did the plaintiff's intestate, Charles T. Newton, by his own negligence, contribute to his injuries and death as alleged in the defendant's answer? Answer: Yes.

3. What amount of damages, if any, is the plaintiff entitled to recover of the defendants? Answer: ............."

The plaintiff made numerous exceptions and assignments of error and appealed to the Supreme Court.

*M. C. Pearce and Thos. W. Ruffin for plaintiff.*
*Clyde A. Douglass and W. B. Jones for defendants.*

PER CURIAM. The plaintiff's intestate was killed by a bus operated by defendant, on 22 June, 1929, about 9:15 p.m. on Highway No. 50, in the village of Forrestville, in Wake County, N. C. The plaintiff's intestate left surviving him a wife and five children. The defendants' bus was going around a curve or semi-circle, and killed plaintiff's intes-

tate on the highway. The jury on the trial of the facts found the defendants guilty of negligence and the plaintiff's intestate guilty of contributory negligence.

Some of the witnesses for plaintiff testified in part:

*Genie Newton:* Saw her husband killed. "From the time the light shown on him he was 129 steps away, and the bus came just like an areoplane. I saw my husband at the time the light first shone on him; he ran to get out of the way. In regard to how much time elapsed from the time the light was on him until the bus hit him, it was just like lightning." The bus was going 50 miles an hour; the road was crooked. She further testified: "A driver of an automobile could see around this curve after he turned, but the bus driver could not see from where he was. The bus was twenty-nine steps from my husband when the light shone on him." On cross-examination: "My husband was hit on the right side, by the left fender of the bus. He was not trying to run across the road in front of the bus. He was trying to get out of the way of the bus. . . . It was the left fender and lamp that hit him. It was turning to the left when it hit him. It was going around a curve. . . . He (my husband) was in a curve and he could not see." In response to the question, "What was there to keep him from seeing across an open space where it ends?" witness answered, "You just could not see. It (the highway) was crooked. It was as crooked as your arm. You cannot look across and up where the curve begins. . . . He was not a deaf man, and was not hard of hearing. His hearing was all right. His eyesight was good." In response to the question, "Could he see all right; do you know why he went across the road and turned back to go that way?" Witness answered, "He just changed. He started slowly across the road, and he kept a slow gait until the light of the bus shined on him and then he ran. He was already in front of it when the light shined on him. The left fender struck him. It just came like that and hit him while he was running to the right side."

*W. T. Raines* testified in part: "The bus ran 220 feet after it struck Mr. Newton. It carried the body of Mr. Newton 107 feet, and it went 113 feet before it dropped the body, making a total distance of 220 feet." On cross-examination: "The bank would not interfere with the view of the man on the road, but it would interfere with the light of a bus seeing a man. A man in the center of the road could see beyond the curve if he would stop and look. If Mr. Newton stopped in the road before going on that road he could have seen that bus coming down the road. The bus was running fifty miles per hour before it hit. . . . It was a star-light night. It was not bright. There was a light where it happened on that post. . . . I said awhile ago if Mr. Newton had stopped and looked towards Wake Forest he would have seen the light,

but his back was towards Wake Forest. The bus driver could not have seen across these lots and seen Mr. Newton. At a point 200 feet from where Mr. Newton was struck the light did not focus on the highway; it focused thirty feet off the highway. I was on the inside and Mr. Newton was on the outside. From where Mr. Newton started across he was in a better position to see the bus than I was."

*Mrs. W. T. Raines:* "The bus ran into him. When the light flashed on him he tried to run across and the bus ran on him. He was struck immediately when he ran in front of it, it was just as quick as that. He was in the center of the road as near as I could see. He left and ran into the west side right in the path of the bus. When he jumped in front of it it was just a little way from him. There was no time to stop after the light flashed on him. He was in the center of the road when the light flashed on him, as near as I could see."

*R. V. Bridges,* on cross-examination, testified: "He was not in the center of the road when the light flashed on him. He liked one step of being in the center of the road. I did not see any reason for him to jump right in front of the bus. He jumped in between and the bus was right on him. The driver did not have any time to do anything. The bus hit him as soon as he jumped in front of it."

Some of the witnesses for the defendants testified in part:

*D. A. Baker:* "I was sitting a little behind the driver. I could have put my hand on his shirt. When I first saw Mr. Newton he was approaching the highway. Mr. Newton was not on the hard surface; he was coming toward the highway and stepped upon the highway. I could not say whether he was on the shoulder or not; he was on the east side, and came to a halt and dashed right in front of the bus. The bus was right at him. The bus was making thirty or thirty-five miles an hour. It was traveling on the right hand side of the highway. The left hand fender of the bus struck Mr. Newton. . . . There was nothing to obstruct my view of the way the wreck happened."

It was in evidence on the part of defendants that the horn blew several times and further evidence to the effect that the view was unobstructed towards Wake Forest for practically 500 feet.

*J. B. Lee,* the bus driver: "At the time Mr. Newton was killed I was going south. It was running thirty or thirty-five miles per hour when Mr. Newton was killed. I have traveled the highway from Forestville a good many times in the night time. I was at all times able to see a distance of 200 feet ahead of me between the beginning of the curve and the point at which Mr. Newton was hit. I was on the right side. I was not on the left side. When I first saw Mr. Newton he was on the left side of the road, near the edge of the hard surface. He was walking on the edge of the hard surface and stopped and he turned and looked in the direction of Wake Forest. As the bus came around the curve at a slow

rate of speed and I got so near to him that it was impossible to stop, he dashed and ran across the road right in front of the bus." At this point the witness was asked the following question: "If he had remained where he was before he dashed and ran across would the bus have hit him at all?" Answer, "No." "The bus was within thirty feet of him when he dashed in front of it. The left hand fender and the headlight struck him. When it struck him I went all to pieces and lost my nerve, just like a man would have done in striking a human being. I was not able to stop immediately."

It will be noted that the jury on the first issue found the defendant guilty of negligence, and on the second issue the plaintiff guilty of contributory negligence. Several assignments of error of plaintiff relate to the first issue; they cannot be sustained, as the finding by the jury on that issue was in his favor. We see no prejudicial error in the exceptions to the evidence and the refusal of the prayers for instruction as requested by plaintiff in the light of the findings of the jury. As to the five jurors who signed the statement, it is well settled that jurors cannot be heard to impeach their verdict. We can find on the whole record no prejudicial or reversible error. The case was submitted to the jury, and as triers of the fact we are bound by their findings. We find in law

No error.