STATE OF NORTH CAROLINA v. ALVIS HOLLINGSWORTH.

(Filed 16 December 1964.)

**1. Criminal Law § 19—**

Upon transfer of a cause from a recorder's court to the Superior Court upon defendant's demand for a jury trial in accordance with provisions of a special act, defendant is properly tried in the Superior Court on an indictment.

**2. Criminal Law § 77—**

The relationship of physician and patient does not exist between a physician called by defendant's brother to examine defendant at the jail to determine whether defendant was under the influence of an intoxicant, it being clear that defendant's brother was acting in his own behalf and not as agent, and the testimony of the physician as to defendant's condition at that time is not precluded by G.S. 8-53.

**3. Constitutional Law § 33—**

Where a defendant does not object to an examination by a physician, testimony by the physician as to defendant's condition in respect to being drunk or under the influence of intoxicating liquor does not violate defendant's constitutional right not to be compelled to give evidence against himself.

**4. Criminal Law § 164—**

Where concurrent sentences are imposed on each of two counts, error relating to one count alone cannot be prejudicial.

**5. Criminal Law § 107—**

The court properly refrains from charging the jury as to the law upon a state of facts not presented by a reasonable view of the evidence in the case.

**6. Criminal Law § 120—**

After the verdict has been accepted and the jury discharged, the jurors should not be heard to impeach their verdict on the ground that they had not heard the judge's charge to them, since to permit jurors to impeach the verdict would be replete with dangerous consequences. The refusal to permit counsel to cross-examine the jurors for the purpose of impeaching their verdict does not violate defendant's rights under Article I, § 17 of the Constitution of North Carolina or under the Fourteenth Amendment to the Federal Constitution.

APPEAL by defendant from *Bickett, J.,* 24 August 1964 Session of HOKE.

Criminal prosecution on an indictment containing five counts: First count, operating a motor vehicle on the public highways while under the influence of intoxicating liquor, a violation of G.S. 20-138; second count, failing to stop when a policeman's siren is sounded; third count, failing to stop a vehicle involved in an accident resulting in property damage at the scene of the accident, a violation of G.S. 20-166(b), and failing to give his name, address, operator's license number, etc., to the driver of the vehicle collided with, a violation of G.S. 20-166(c) (this count charges a violation of two subsections of G.S. 20-166); fourth count, an assault on Alex S. Norton, a deputy sheriff of Hoke County, with a deadly weapon, to wit, a one-half ton pickup truck; fifth count, resisting, delaying, and obstructing a public officer, to wit, Alex S. Norton, deputy sheriff of Hoke County, while discharging or attempting to discharge a duty of his office, a violation of G.S. 14-223.

Plea: Not Guilty. The record states that at the end of the State's case the court dismissed the charges against the defendant alleged in counts two and three in the indictment. Verdict: Guilty of operating an automobile while under the influence of intoxicating liquor on a public highway as charged in the first count in the indictment, and of resist-

ing arrest as charged in the fifth count of the indictment, and not guilty of an assault with a deadly weapon as charged in the fourth count of the indictment.

From a judgment of imprisonment for twelve months on each of the counts upon which he was convicted, both sentences to run concurrently, defendant appeals.

*Attorney General T. W. Bruton, Deputy Attorney General Harry W. McGalliard, and Assistant Attorney General Richard T. Sanders for the State.*
*Harrison & Diehl for defendant appellant.*

PARKER, J. Defendant was arrested on a warrant charging the offenses later alleged in the indictment here, which required him to appear before the recorder's court of Hoke County. He appeared before the recorder's court and demanded a jury trial. Whereupon, his case was transferred to the superior court of Hoke County, pursuant to the provisions of Ch. 408, Public-Local Laws, Session 1937, which is an act relating to the recorder's court of Hoke County. In the superior court, under such circumstances, he was properly tried upon an indictment. *S. v. Thomas,* 236 N.C. 454, 73 S.E. 2d 283.

When defendant was tried in the superior court, he was represented by Arthur L. Lane, a lawyer of his own choice.

The indictment avers the offenses charged therein were committed on 10 March 1964. Dr. R. M. Jordan, a practicing physician in Raeford, was a witness for the State. This is a summary of his testimony on direct examination, except when quoted: On the night of 10 March 1964, he and defendant's brother were together at the common jail of Hoke County. He examined the defendant. He smelt the odor of alcoholic beverage on his breath. His brother "kept asking me if I thought he was drunk and I told him 'yes' I thought he was; so he told me I need not bother to go any further and he was going to get him back upstairs, that there was no use wasting any money." From his examination of the defendant, in his opinion he was under the influence of some intoxicant. At this point defendant's counsel objected, and his objection was overruled. Immediately thereafter, without objection, Dr. Jordan testified that in his opinion defendant was under the influence. The time was 10:55 p.m. This is the substance of Dr. Jordan's testimony on cross-examination by defendant's counsel Lane: Defendant's brother talked to him on the telephone. When he was at the jail, defendant's brother was there with him wanting to know if defendant was drunk. On re-direct examination Dr. Jordan testified:

"I could not tell from my examination that he was suffering any epilepsy seizure or any condition that he may have had." At this point defendant's counsel objected. His objection was overruled. He then excepted to the entire testimony of Dr. Jordan, and this is his exception No. 1.

Defendant assigns as error the admission of the entire testimony of Dr. Jordan, on the ground that his testimony was inadmissible under the provisions of G.S. 8-53. This assignment of error is based on his exception No. 1. This assignment of error is overruled. The evidence is clear that Dr. Jordan went to the jail to examine defendant to determine if he was drunk or under the influence of intoxicating liquor at the request of defendant's brother, not at the request of defendant, and not to perform any professional services for defendant. The relationship of patient and physician, under such circumstances, did not exist between defendant and Dr. Jordan within the purview of G.S. 8-53, and Dr. Jordan's testimony that defendant was under the influence of some intoxicant is not inadmissible by reason of the provisions of G.S. 8-53, and was properly admitted in evidence. *S. v. Newsome,* 195 N.C. 552, 143 S.E. 187; *S. v. Wade,* 197 N.C. 571, 150 S.E. 32; *S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84; Stansbury, N.C. Evidence, 2d Ed., § 63.

Dr. Jordan examined defendant without any objection on his part. Dr. Jordan's testimony as to defendant's condition in respect to being drunk or under the influence of intoxicating liquor does not violate defendant's constitutional right not to be compelled to give evidence against himself. *S. v. Eccles,* 205 N.C. 825, 172 S.E. 415; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *S. v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387.

Defendant assigns as error, based on his exception No. 2, that the court failed to charge the jury in respect to the fifth count in the indictment that "an individual has the right to resist an unlawful arrest, using reasonable force." Defendant does not challenge the correctness of that part of the charge in respect to the first count in the indictment charging him with operating an automobile upon a public highway while under the influence of intoxicating liquor. Even if the court erred in failing to charge on the fifth count in the indictment as contended by defendant, or even if the court erred in its charge in any respect as to the fifth count in the indictment, which is not conceded, no harm resulted to defendant of which he can justly complain, because concurrent prison sentences of equal length were imposed by the court on the conviction on the first count in the indictment charging driving an automobile on a public highway while under the influence of intoxicating liquor and on the conviction on the fifth count in the indictment

charging resisting an officer while in the discharge of the duties of his office. *S. v. Booker*, 250 N.C. 272, 108 S.E. 2d 426; *S. v. Thomas*, 244 N.C. 212, 93 S.E. 2d 63; *S. v. Riddler*, 244 N.C. 78, 92 S.E. 2d 435. Further, the record contains the testimony of Dr. Jordan alone. The charge of the court indicates that Alex S. Norton, deputy sheriff of Hoke County, testified for the State. There is no evidence in the record before us tending to show defendant's arrest was unlawful. A judge should never charge the jury upon a state of facts not presented by some reasonable view of the evidence in the case. *S. v. McCoy*, 236 N.C. 121, 71 S.E. 2d 921; *S. v. Wilson*, 104 N.C. 868, 10 S.E. 315; *Electric Company v. Dennis*, 259 N.C. 354, 130 S.E. 2d 547.

It appears that defendant was tried, convicted, and sentenced on the first day of the session of court, and that on the third day of the session H. D. Harrison, Jr., a member of the Hoke County Bar, appeared in court and made a motion that the court permit him, "along with solicitor," to examine the jurors, who had convicted defendant, to find out whether they had heard the court's charge to the jury in defendant's trial. The court denied his motion, and he excepted. Attorney Harrison then asked would the court do so on its own motion. Eleven of the jurors in defendant's case were in the courtroom. The court asked the eleven jurors present did any one of them fail to understand his charge. Juror Duncan replied, "No sir." Duncan later said: "I would say it was difficult to hear you, but I think as for myself I heard you." Another juror replied: "We say it was hard to understand you, but I believe I could understand you." Juror Hendrix replied: "I understood the instructions. I didn't understand the whole entire charge, but I understood the instructions, part of it." Then this appears in record: "Court: Is there anybody that didn't understand the instructions, the words I gave you with respect to the offenses charged, is there any one that didn't understand the instructions? Pause — no answer — I take it from your silence then, that all of you eleven did understand the instructions of what you would have to find from the evidence and beyond a reasonable doubt to return a verdict of guilty to driving a motor vehicle upon a highway while under the influence of intoxicating liquor and on the charge of resisting arrest? Pause — You acquitted the defendant on assault with a deadly weapon, isn't that right?" The record then shows this: "JUROR DUNCAN: Yes sir. COURT: Did you understand all the instructions that I gave? JUROR: I understood that. COURT: Let the record so show." After this Attorney Harrison was permitted by the court to examine juror Hendrix, who answered him substantially as he stated to the court, and to examine juror Best, who answered: "I did not hear all of his charge; I heard his instruc-

tions, but his charge, all of it, I could not understand it, because it was too low, as he repeated the testimony." At this point the court told Harrison not to ask the jurors any other questions. Whereupon attorney Harrison requested the court to let him cross-examine the jurors as to their ability to hear fully and completely the court's instructions. The court denied his request, and he excepted and assigns this as error.

Beginning with *Sutrell v. Dry,* 5 N.C. 94 (1805), and in an unbroken line of decisions to the same effect since, it is firmly established in this State, as a general rule at least, based upon wise reasons of public policy that jurors, after their verdict has been rendered to and received by the court and after they have been discharged and separated, will not be allowed by testimony or affidavit to impeach, to attack, or to overthrow their verdicts, nor will evidence from them be received for such purpose, and that evidence for that purpose, if admitted at all, must come from some other source. *S. v. McLeod,* 8 N.C. 344; *Bellamy v. Pippin,* 74 N.C. 46; *S. v. Smallwood,* 78 N.C. 560; *S. v. Brittain,* 89 N.C. 481; *S. v. Royal,* 90 N.C. 755; *Lafoon v. Shearin,* 95 N.C. 391; *Jones v. Parker,* 97 N.C. 33, 2 S.E. 370; *Johnson v. Allen,* 100 N.C. 131, 5 S.E. 666; *S. v. Best,* 111 N.C. 638, 15 S.E. 930; *Purcell v. R. R.,* 119 N.C. 728, 26 S.E. 161; *Coxe v. Singleton,* 139 N.C. 361, 51 S.E. 1019; *S. v. Hall,* 181 N.C. 527, 106 S.E. 483; *Baker v. Winslow,* 184 N.C. 1, 113 S.E. 570; *Lumber Co. v. Lumber Co.,* 187 N.C. 417, 121 S.E. 755; *S. v. Dove,* 189 N.C. 248, 126 S.E. 610; *Newton v. Brassfield,* 198 N.C. 536, 152 S.E. 499; *Campbell v. R. R.,* 201 N.C. 102, 159 S.E. 327; *Lambert v. Caronna,* 206 N.C. 616, 175 S.E. 303; *In re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1; Stansbury, N. C. Evidence, 2d Ed., § 65.

In *Sutrell v. Dry, supra,* the Court held that it would not grant a new trial upon an affidavit of one of the jurors that he did not assent to the verdict. The Court said: "Applications like the present for new trials have always been rejected. Were they to be listened to by the Court, they would open a door for much corruption."

In *Jones v. Parker, supra,* a motion was made for a new trial, based upon affidavits filed by some of the jurors that they did not concur in the verdict, and by others that they did not understand portions of the charge of the court. Counter-affidavits by other members of the jury were also filed. The case states that "the Court, considering the affidavits fully, and acting upon personal knowledge of what transpired in court, in the exercise of its discretion, refused the motion." The opinion of the Court states:

"His Honor gave full consideration to the affidavits of the jurors in regard to their verdict. In *S. v. McLeod,* 1 Hawks, 346, Henderson, J., said: 'It has been long settled, and very properly, that evidence impeaching their verdict, must not come from the jury; but must be shown by other testimony'; and this has been affirmed in *S. v. Smallwood,* 78 N.C. 563.

"We call attention to these authorities, because we think it unsafe and unwise, as a rule, to permit verdicts to be impeached by the testimony of jurors rendering them."

The judgment below was affirmed.

In *Coxe v. Singleton, supra,* plaintiff presented to the court a paper-writing signed by several jurors who tried the case, to the effect that they did not fully understand the issues and the legal effect of their findings, and moved to set aside the verdict. The court declined and the plaintiff excepted. The Court said in its opinion: "It is familiar learning that jurors cannot be heard to impeach their verdict. If that were allowed, lawsuits would seldom be determined."

In *re Will of Hall, supra,* was a *caveat* proceeding to invalidate a will on the grounds of mental incapacity and undue influence, which resulted in a verdict for the propounders. The caveators moved to set aside the verdict, submitting affidavits of eight of the jurors who served at the trial to the effect that one juror had brought a volume of the Encyclopedia Americana into the jury room containing a definition of "undue influence," that this definition was read to the jury and a number of them studied it individually, and that the jury was influenced thereby. The trial judge refused to set the verdict aside, and this ruling on appeal was assigned as error. The majority opinion, after stating the firmly established rule in this State, as set forth above, that jurors will not be allowed to impeach their verdicts, said: "The rule is a salutary one. If it were otherwise, every verdict would be subject to impeachment." It is true the majority opinion went further and said the extraneous matter in respect to the definition of "undue influence" in the encyclopedia was not prejudicial. The majority opinion concludes: "We find no error in the refusal of the court to permit the jury to impeach the verdict." The affidavits were in respect to misconduct during the retirement of the jury in the secrecy of the jury room. In the instant case different facts exist. Here appellant's counsel Harrison sought to cross-examine on Wednesday the trial jurors, after their verdict had been rendered to and received by the court and after they had been discharged and separated on Monday, in respect to whether or not they had understood the judge's instructions to them, which

were uttered in open court, presumably in the presence of defendant and his counsel Lane.

The common law rule that jurors may not testify to misconduct on their part in order to impeach their verdicts derives from the opinion of Lord Mansfield, Lord Chief Justice of England, in *Vaise v. Delaval,* 1 T. R. 11, 99 Eng. Rep. 944 (K. B. 1785). In that case there was a motion by law for a rule to set aside a verdict based upon an affidavit of two jurors, who swore that the jury, being divided in their opinion, tossed up, and that the plaintiff's friends won. The Court in refusing the rule stated in its opinion:

> "The Court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a very high misdemeanor; but in every such case the Court must derive their knowledge from some other source: such as from some person having seen the transaction through a window, or by some such other means."

*Vaise v. Delaval,* with the prestige of the famous Chief Justice and bearing his great name, soon prevailed in England, and its authority came to receive in the United States an adherence almost unquestioned. 8 Wigmore on Evidence, § 2352, p. 697 (McNaughton Rev. 1961). In Wigmore, *ibid,* § 2354, p. 702, it is said: "Except in a few jurisdictions where the rule of Iowa is accepted, the rule of Lord Mansfield seems now to be firmly settled law." Of course, this statement would not be applicable where the *Delaval* rule has been abrogated by statute. See Wigmore, *ibid,* § 2353 *et seq.,* where there is a discussion of the policy of the rule in the *Delaval* case and quotations from opinions criticizing and analyzing it.

In Wigmore, *ibid,* § 2349, p. 681, it is said: "Accordingly, it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances: that one or more jurors *misunderstood* the judge's *instruction;* * * *."

In *McDonald v. Pless and Winbourne,* 238 U.S. 264, 59 L. Ed. 1300, the Court held that jurors may not, in the Federal courts, impeach their own verdict by testimony that it was a quotient verdict. In its opinion the Court said:

> "[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the

hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference."

This is not a case like *Rex v. Thomas*, [1933] 2 K. B. 489, in which two of the jurors were Welsh and could not understand English, and the evidence was given partly in Welsh and partly in English, and the charge of the judge was delivered in English, and like *Ras Behari Lal and Others v. The King Emperor*, [1933] 50 T. L. R. 1, in which a number of native subjects of India were on trial for murder and were found guilty, and it subsequently appeared that several of the jurors could not understand English, and in which the addresses of counsel and the judge's charge to the jury were all delivered in English. In respect to these two cases there is a comment in The Canadian Bar Review, Vol. 12, 1934, p. 309 *et seq.*, and in The Australian Law Journal, Vol. 7, 1933-34, p. 350.

It would seem that defendant and his counsel Lane were in the courtroom when the judge delivered his charge to the jury, and heard all or part of it. At least, so far as the record shows, neither defendant nor his counsel Lane raised any objection to the tone of voice of the judge when he was delivering his charge to the jury. The verdict was rendered Monday, and judgment that day pronounced on the verdict, and the jury was discharged and separated. To permit defendant's new counsel Harrison on the following Wednesday, under such circumstances, to cross-examine the trial jurors to determine whether or not they had heard the judge's charge to them, or to permit defendant to offer affidavits of the trial jurors, or any of them, to that effect, would allow the harassment of the jurors, could lead to the grossest fraud and abuse, would be replete with dangerous consequences, and no verdict would be safe. When attorney Harrison made a motion to examine the trial jurors to determine whether they had heard the judge's charge to them, the trial judge should have promptly denied it, and ruled that under the circumstances here testimony from the trial jurors would not be heard to impeach their verdict on the ground they had not heard the judge's charge to them. Defendant in his brief contends the failure of the court to permit his counsel Harrison to cross-examine the trial jurors under the circumstances here violated his rights under Art. I,

sec. 17, of the State Constitution and under the 14th Amendment to the United States Constitution. He has favored us with no citation of authority supporting his contention, and after a diligent search we have found none. His contention is not tenable. There is no merit in defendant's assignment of error that the court erred in failing to set aside the verdict and judgment because of the jurors' alleged failure to hear the charge of the judge to the jury.

Defendant does not assign as error that the evidence was insufficient to carry the case to the jury. We have carefully considered all defendant's assignments of error, and all are overruled. In the trial below we find.

No error.