JOHN WILEY LASHLEE, III and REBECCA C. CLARK-LASHLEE, Plaintiff-Appellants v. WHITE CONSOLIDATED INDUSTRIES, INC. and ELECTROLUX MOTOR AB, Defendant-Appellees

No. COA00-490

(Filed 17 July 2001)

1. **Products Liability— contributory negligence—chainsaw kickback—alleged negligent design and manufacture—failure to tie into tree**

    The trial court did not err by granting summary judgment for defendants based upon plaintiff's contributory negligence where plaintiff became a paraplegic after falling from a tree while using a chainsaw manufactured by defendants; plaintiff alleged that the original non-kickback chain had been replaced with a more dangerous chain; plaintiff had experienced kickback and was aware of the danger; he had tied himself into the tree earlier in the day because he had seen professionals do so and because it was common sense, but did not do so when he decided to cut the final limb; plaintiff had never seen anyone try to cut a tree while standing on a ladder, but stood near the top of the ladder, leaned his left side against the tree, and began to cut; plaintiff was knocked from the tree, unconscious and with a laceration along the center of his head; and plaintiff alleged that defendants were negligent in designing, manufacturing, and selling a chainsaw with inadequate safety devices. Plaintiff's experts in chainsaw design were not competent to render an opinion on the reasonable use of a chainsaw in a tree; plaintiff knew that kickback could knock him

off the ladder and out of the tree and his failure to secure himself to the tree constituted contributory negligence.

## 2. Damages and Remedies— punitive damages—chainsaw replacement chain

The trial court properly granted summary judgment for defendants on the issue of punitive damages in a negligence action arising from replacement of a low-kickback chainsaw chain with a non-approved chain. The characterization of defendants' actions as conscious and reckless by a witness who was not testifying as a legal expert did not create a genuine issue of material fact.

Appeal by plaintiffs from order and judgment dated 15 December 1999 by Judge B. Craig Ellis in Superior Court, Bladen County. Heard in the Court of Appeals 14 March 2001.

*Jones Martin Parris & Tessener, PLLC, by John Alan Jones, for plaintiff-appellants.*

*Ward & Smith, P.A., by Gary J. Rickner, and Dennis R. Bailey for defendant-appellees.*

McGEE, Judge.

Plaintiff John Wiley Lashlee, III (Lashlee) was rendered a paraplegic after falling from a tree while using a chainsaw manufactured by defendants. Plaintiffs sued defendants seeking recovery on multiple grounds, including negligence, and seeking punitive damages. Plaintiffs allege that Lashlee was hit in the head and knocked to the ground when the chainsaw he was using "kicked back" severely after the chainsaw's original low-kickback chain had been unintentionally replaced with a more dangerous chain. In their complaint, plaintiffs allege that defendants negligently designed, manufactured, and sold a chainsaw with inadequate safety devices, and they seek punitive damages on the grounds that defendants' negligence was wanton, gross, reckless, and in callous disregard for the rights and safety of others.

Defendants moved the trial court for summary judgment. During the summary judgment hearing, plaintiffs withdrew all claims except those for negligence and punitive damages. The trial court granted defendants' motion for summary judgment on the two remaining claims. Plaintiffs appeal.

Lashlee testified during his deposition that the chainsaw involved in the accident had actually belonged to his neighbor, Rex Tillotson, although Lashlee had been using the saw regularly for about three years prior to his injury. Lashlee estimated that he had used the saw some one hundred times a year during the two years preceding his injury, primarily cutting firewood for a wood stove he owned. Prior to his injury, Lashlee never received any formal training in chainsaw use and never read the operating manual or other written material concerning the use, operation and maintenance of the chainsaw. Instead, Lashlee learned how to use the chainsaw by watching professionals work, watching television, and talking with knowledgeable individuals like Isaac Simmons, Jr. (Simmons) and Layton Priest.

From watching professionals, Lashlee learned always to stay balanced with the chainsaw, not to cut above shoulder level, and to wear protective equipment such as plastic glasses, gloves, and boots. Lashlee had observed that professionals did not always wear hardhats, so Lashlee never acquired one for himself. Lashlee had observed professionals cutting in trees, both from an hydraulic bucket and by tying into the tree, although Lashlee had never seen anyone use a chainsaw from a ladder. Lashlee was familiar with kickback, having experienced it some four or five times prior to the time of his injury, but he had never observed anyone else experience kickback and was not clear on its mechanics other than that it happened when the tip of the chainsaw blade came in contact with some object. Lashlee had never cut in a tree before the day of his injury and never spoke with either Simmons or Layton Priest about cutting in a tree. Lashlee did talk with James Alton Boswell (Boswell), the town maintenance supervisor, about whether he should cut down the tree limb he was cutting when his injury occurred, but they did not talk about *how* to cut it.

Lashlee sought to bring down a tree that was close to his house on 28 October 1992. Lashlee began working about noon, and the day was warm and sunny. The tree, a thirty-foot bay tree, had a diameter of about a foot and a half and split into a "V" about ten feet above the ground. To control the tree's fall, Lashlee decided to remove several limbs from the house side of the tree. Because the limbs were about twenty feet above the ground, Lashlee used a neighbor's ten-foot ladder to climb into the "V," then tied himself into the tree for safety. Lashlee tied himself in because he had watched professionals do so, and because it was common sense to him to do it.

After cutting the limbs, Lashlee untied himself from the tree, climbed down, and returned the ladder to his neighbor. Using the rope with which he had tied himself into the tree, as well as the rope he had used to raise the chainsaw into the tree, Lashlee tied the tree to the back of his truck. Boswell arrived, and Lashlee cut a preparatory notch into the tree. Boswell started Lashlee's truck and stressed the rope attached to the tree as Lashlee began the final cut to bring down the tree. However, Lashlee became concerned that the remaining limb on the house side of the tree could cause the tree to twist as it fell, damaging the house. Lashlee and Boswell discussed the possibility of such twisting, and Lashlee decided to cut off the remaining limb.

Lashlee retrieved the ladder from his neighbor, an aluminum ladder that was the lower half of a twenty-foot extension ladder. The rungs were round, ridged, and about two inches in diameter. Lashlee asked Boswell to hold the ladder and then climbed the ladder carrying the chainsaw. The limb he sought to cut exited the tree about a foot below the "V" in the tree, so Lashlee positioned himself about three or four rungs from the top of the ladder. The limb was to his right, so Lashlee placed his left foot a rung higher on the ladder than his right foot and leaned the left side of his body against the tree. Lashlee had his left leg bent and the fatty part of his underarm against the tree, with his weight against the tree. Lashlee felt balanced and secure and did not have to reach to cut the limb, which was about at the height of his diaphragm. Lashlee testified that he remembered starting to cut the limb, and that the next thing he remembered was lying on the ground and asking someone to help him up. In addition to a neck injury, Lashlee received a laceration along the center of his head some two inches long, although the baseball-style cap he was wearing while cutting had only a scratch or a grease mark on it.

Boswell testified that, at the time of Lashlee's accident, Boswell was holding the ladder for Lashlee. Boswell was not watching Lashlee cut because sawdust was falling down. At some point, Boswell heard the chain on the chainsaw stop abruptly, a sound Boswell believed to be due to kickback. Boswell looked up and saw Lashlee falling straight back from the ladder, the chainsaw falling separately. Lashlee's eyes were wide open and he made no movement or sound as he fell, knocked out.

Boswell was maintenance superintendent for the town of Clarkton in 1992. The town maintenance staff used chainsaws when needed, though they would always hire contractors when a chainsaw

had to be used in a tree. Most contractors used bucket trucks, except one, an individual who would sometimes tie himself into a tree and sometimes would not. Boswell never spoke with that individual about when it was appropriate to tie into a tree.

Lashlee testified that, sometime before the accident, he had damaged the chain on the chainsaw and had brought the chainsaw to Simmons to have the chain replaced. Simmons, a professional tree cutter, owned and ran a chainsaw shop. Lashlee had never before had the chain replaced and did not ask Simmons to put any particular kind of chain on the chainsaw. Ten days before the accident, Lashlee took the chainsaw to a different chainsaw shop and had the chain sharpened. At the time of his injury, Lashlee did not know what a low-kickback chain was, would not have recognized one if he saw it, and had no idea whether the chain on the chainsaw was a low-kickback chain.

Simmons testified that he had been a professional tree cutter for more than thirty years at the time of Lashlee's injury. In addition, Simmons had opened a chainsaw and small engine store in the early 1980's and had become a dealer for defendants' chainsaws after calling defendant's office in Charlotte a few times and receiving a couple of visits from a salesman for defendants. Simmons did not recall having to sign an agreement or contract to become a dealer, and Simmons was not required to attend, nor did he attend, any of the various training programs that were offered by defendants. In 1987, Simmons sold Rex Tillotson the chainsaw that was ultimately involved in Lashlee's injury.

Simmons closed his shop sometime around 1990 for health reasons, although he continued to do some repair work out of his home. Simmons testified that he remembered Lashlee coming to his home for a new chain, but did not actually remember putting a chain on the chainsaw. Simmons identified the chain on the chainsaw during the deposition as a chisel chain, as opposed to one designed for softer woods, and testified that the saw would have been sold with such a chisel chain. Simmons had never heard of a low-kickback chain and did not recall ever being told by defendants to put only low-kickback chains on the chainsaw. Simmons did not consider the suggested chains listed on the label on the chainsaw to be the only ones he should install.

Simmons testified that he had experienced kickback thousands of times and had been bruised badly, but never cut. Simmons

explained that only a bar tip guard can prevent kickback, but he had never actually used one, and in fact most people just take it off at the time they buy a chainsaw. Thus, Simmons never ordered the bar tip guards for his shop, though defendants' salesman did teach him how to install them.

Charles Suggs (Suggs) testified that he had a Ph.D. in agricultural and biological engineering and that his research focused on man-machine systems. His publications include the development, testing and evaluation of a chainsaw kickback simulator. Suggs concluded that the chain on the chainsaw used by Lashlee was not a low-kick-back chain, and that excessive kickback knocked Lashlee out of the tree on the day of the accident. Moreover, Suggs testified that he had visited nine chainsaw dealers with a chainsaw like the one involved in Lashlee's injury, and had asked to have a new chain installed. Of the nine, one dealer did not have a chain that would fit, three dealers installed low-kickback chains, one dealer installed a chain that may or may not have been a low-kickback chain, and four dealers installed chains not classified as low-kickback.

Suggs opined that defendants were negligent in not manufacturing a chainsaw bar that could only be fitted with a low-kickback chain, not color-coding low-kickback chains to make them easily identifiable, and not strengthening the warning language on the label that recommended which chains should be used with the chainsaw. Suggs acknowledged that most chainsaw manufacturers do not meet those standards but concluded therefore that those other manufacturers were negligent as well. Suggs had no reason to believe that the chain saws manufactured by defendants did not meet all voluntary safety standards adopted by the industry.

It was also Suggs' opinion that, although it would certainly be a good idea to tie oneself into a tree if there were any question about the stability of one's footing, given Lashlee's chainsaw experience, it was safe for Lashlee to use a chainsaw on a ladder as he did. However, Suggs acknowledged that he had no professional training in the use of chainsaws and had never tried to use a chainsaw in a tree.

William F. Kitzes (Kitzes) testified that he was a safety analyst and product safety manager, and that he had given two to three hundred depositions on product safety issues over the previous fifteen years. In his opinion, the warnings used by defendants informing users about the importance of low-kickback replacement chains, and defendants' training of dealers to insure that users were aware of the

**LASHLEE v. WHITE CONSOL. INDUS., INC.**

[144 N.C. App. 684 (2001)]

importance of low-kickback replacement chains, were inadequate. Kitzes had no information about whether other chainsaw manufacturers required their dealers to attend training or what warning language other chainsaw manufacturers used, but considered that issue irrelevant. In his opinion, defendants had consciously and recklessly failed to provide consumers with the information they needed, although Kitzes did not allege that defendants had acted deliberately.

Kitzes testified that he had used a chainsaw no more than once or twice, and only in a laboratory setting. He acknowledged that, when cutting a tree, it would be prudent to tie in and he would recommend it, when it could be done. However, Kitzes believed that there might be situations in which tying into a tree might not be appropriate or feasible.

I.

[1] Plaintiffs first assign error to the trial court's grant of summary judgment in favor of defendants because of plaintiffs' alleged contributory negligence. Summary judgment is appropriate under N.C. Gen. Stat. § 1A-1, Rule 56

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). The trial court held that the undisputed facts before it established Lashlee to be contributorily negligent as a matter of law, and accordingly granted summary judgment to defendants on the claim of negligence (R 80).

"Issues of contributory negligence, like those of ordinary negligence are rarely appropriate for summary judgment. Only where plaintiff's own negligence discloses contributory negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." *Jenkins v. Lake Montonia Club*, 125 N.C. App. 102, 104, 479 S.E.2d 259, 261 (1997) (citations omitted).

"Contributory negligence per se may arise where a plaintiff knowingly exposes himself to a known danger when he had a *reasonable* choice or option to avoid that danger, or when a plaintiff heedlessly or carelessly exposes himself to a danger or risk of which he knew or should have known."

*Davies v. Lewis*, 133 N.C. App. 167, 171, 514 S.E.2d 742, 744, *disc. review denied*, 350 N.C. 827, 537 S.E.2d 819 (1999) (quoting *Lenz v. Ridgewood Associates*, 55 N.C. App. 115, 122-23, 284 S.E.2d 702, 707 (1981), *disc. review denied*, 305 N.C. 300, 290 S.E.2d 702 .(1982)) (emphasis in original). We therefore consider whether Lashlee was contributorily negligent as a matter of law.

In *Jenkins*, the plaintiff was partially paralyzed after making a shallow dive from his knees from the end of a lakeside sliding board. The plaintiff acknowledged that he and others had gone down the slide board on their knees many times before; that he knew the water under the board was shallow, although he did not know how shallow; and that he knew it would hurt if he hit his head on the bottom of the lake. This Court, in affirming the trial court's finding of contributory negligence as a matter of law, held that "plaintiff was aware of the potential danger and knew the risk of the activity in which he engaged. The danger of striking the bottom of the swimming area when diving head first into shallow water was obvious to plaintiff." *Jenkins*, 125 N.C. App. at 107-08, 479 S.E.2d at 263 (citation omitted).

In *Davies*, the plaintiff broke her neck after making a shallow dive off of a floating dock. The plaintiff had made dives off the dock before, but never in the direction of the dive that broke her neck. The water around the dock had a visibility of only one to two inches; the plaintiff had been taught not to dive into water of an unknown depth; and the plaintiff was aware that water depth changed with the tide, although she assumed that tidal conditions at the floating dock would remain constant. This Court affirmed the trial court's finding of contributory negligence as a matter of law, holding that the plaintiff

> failed to use ordinary care before diving into the water on the date in question. She knew from her experience as a trained diver that diving into water of an unknown depth was dangerous, but did so by her own choosing and at her own risk. There was a reasonable opportunity for her to avoid this danger by jumping instead of diving into the water, and her decision to dive without attempting to measure the water's depth constitutes contributory negligence.

*Davies*, 133 N.C. App. at 170-71, 514 S.E.2d at 744.

In the case before us, Lashlee had experienced kickback and was aware of the danger it posed. He had tied himself into the tree earlier

on the day of his injury to prevent himself from falling, both because he had seen professionals do so and because it was "common sense." Lashlee had never seen anyone try to cut a tree while standing on a ladder. Yet, when he decided to cut the final limb, Lashlee chose not to retrieve the rope he had previously used to tie himself in. Instead, Lashlee stood near the top of the ladder, leaned his left side against the tree, and began to cut. We conclude that Lashlee was aware of the danger that kickback could potentially knock him backward off the ladder and out of the tree, and that Lashlee's failure to secure himself to the tree constituted contributory negligence as a matter of law.

Plaintiffs contend that, under *Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 488 S.E.2d 240 (1997), plaintiffs are entitled to have the issue of Lashlee's contributory negligence heard by a jury. In *Nicholson*, the plaintiff was an experienced electrical lineman working in an insulated hydraulic bucket beneath energized electrical lines. To protect himself, the plaintiff wore a helmet and insulated gloves. Twice prior to the accident, the plaintiff's helmet blew off and, each time, the plaintiff immediately lowered the bucket and retrieved the helmet. The third time his helmet blew off, however, the plaintiff was in the midst of tightening a bolt and chose to continue tightening. One of the overhead electrical lines then somehow came in contact with the plaintiff's head, and current ran through the plaintiff's body and out through his gloved hands, severely injuring the plaintiff.

The trial court in *Nicholson* held that the plaintiff was contributorily negligent as a matter of law. Our Supreme Court reversed, noting that one of the plaintiff's experts had stated by affidavit that the plaintiff, although failing to comply with safety standards, had acted as other similarly trained linemen would act in similar circumstances. The Court concluded that an issue of fact existed as to the reasonableness of the plaintiff's conduct under the circumstances, and therefore that summary judgment was improper.

In the case before us, plaintiffs' experts, Suggs and Kitzes, each suggested that Lashlee's failure to tie himself into the tree at the time of the accident may have been reasonable under the circumstances. However, Suggs acknowledged that he had no professional chainsaw training, and that he had never used a chainsaw in a tree. Kitzes acknowledged that he had hardly ever used a chainsaw at all, and never outside of a laboratory. Although Suggs and Kitzes may have

been qualified to testify about chainsaw design, neither was competent to render an expert opinion on the reasonable use of a chainsaw in a tree.

We conclude that, at the time defendants moved for summary judgment on the issue of defendants' negligence, no genuine issue of fact existed as to the negligence of Lashlee's conduct. The trial court did not err in finding Lashlee contributorily negligent as a matter of law.

## II.

[2] Plaintiffs also assign error to the trial court's grant of summary judgment in favor of defendants on the issue of punitive damages.

> As a general rule, punitive damages may be recovered where tortious conduct is accompanied by an element of aggravation, as when the wrong is done willfully or under circumstances of rudeness, oppression, or express malice, or in a manner evincing a wanton and reckless disregard of the plaintiffs' rights.

*Connelly v. Family Inns of Am., Inc.*, 141 N.C. App. 583, 593, 540 S.E.2d 38, 44-45 (2000) (citation omitted). We note also that "contributory negligence will not bar recovery where the defendant is guilty of willful or wanton negligence." *Collins v. CSX Transportation*, 114 N.C. App. 14, 21, 441 S.E.2d 150, 154, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 388 (1994) (citation omitted).

Plaintiffs assert that defendants demonstrated willful or wanton negligence by making it possible for users of defendants' chainsaws to unknowingly replace a factory-approved low-kickback chain with a non-approved chain. Plaintiffs point to the limited warnings on the chainsaw itself, the fact that most chainsaw users cannot tell a low-kickback chain from other chains, and defendants' failure to require their dealers to attend safety training as evidence of defendants' negligence. Plaintiffs argue that, because it is foreseeable that a chainsaw user will need a replacement chain at some point, defendants' failure to take additional steps to assure that the replacement chain will be a low-kickback chain demonstrates a wanton and reckless disregard for the safety of the users of its chainsaws.

In order to warrant punitive damages, an act of negligence must be willful or wanton.

> A wanton act is an act done with a "wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights

of others." An act is willful when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another.

*Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 51, 524 S.E.2d 53, 60 (1999) (citations omitted). In *Benton*, our Court held that evidence of a restaurant's failure to provide adequate security for its diners, despite a duty to do so and its location in a high-crime area, was insufficient as a matter of law to justify a punitive damages verdict. *See id.* Similarly, we hold that plaintiffs in the present case have failed to present sufficient evidence to support a finding that defendants were willfully or wantonly negligent.

Plaintiffs contend that the expert opinion of Kitzes that defendants consciously and recklessly failed to provide consumers with needed information is sufficient to take the issue of punitive damages to a jury. Defendants counter that, because Kitzes was not testifying as a legal expert, his legal characterization of defendants' acts carries no independent weight. *See Howard v. Jackson*, 120 N.C. App. 243, 249, 461 S.E.2d 793, 798 (1995). We agree with defendants and hold that the mere characterization by Kitzes of defendants' negligence as conscious and reckless did not create a genuine issue of material fact.

We therefore affirm the trial court's grant of summary judgment in favor of defendants. Defendants have adequately demonstrated Lashlee's contributory negligence as a matter of law, and plaintiffs have failed to present competent evidence that defendants were willfully or wantonly negligent.

Affirmed.

Judges WYNN and THOMAS concur.