RALPH LINDSEY, JR., Plaintiff v. BODDIE-NOELL ENTERPRISES, INC.,
d/b/a HARDEE'S SKAT-THRU, Defendant

No. COA00-1420

(Filed 20 November 2001)

**1. Discovery— motion to compel—not timely**

The trial court did not abuse its discretion in a negligence action arising from defendant serving plaintiff a cup of water poured from a pitcher which had contained a chlorine cleaning solution by denying plaintiff's motion to compel discovery one month before the trial. Although the documents requested by plaintiff (identifying similar claims) were relevant to punitive damages, plaintiff had not requested the documents during the twenty months since the complaint was filed. Plaintiff had ample opportunity to obtain the documents. N.C.G.S. § 1A-1, Rule 26(b)(1).

**2. Jury— disregard of instructions—definition of willful and wanton**

The trial court erred by denying plaintiff's motion for JNOV in a negligence action arising from a fast food restaurant serving water from a container which had contained a chlorine cleaning solution where a juror brought into the jury room definitions of "willful" and "wanton" he had obtained from his computer during a lunch recess. There was prejudice because it would be more difficult to show willful and wanton conduct under the computer definitions than the pattern jury instructions given by the court, the court was unaware of the use of the computer definitions until after the trial and did not have an opportunity to instruct the jury to disregard those definitions, and the jury did not award punitive damages despite 25 similar incidents between 1994 and 1995.

**3. Negligence— definition of willful and wanton—applicable instruction**

The trial court did not abuse its discretion in a negligence action by not giving the jury instruction requested by plaintiff on the definition of willful and wanton where the instruction requested by plaintiff was not applicable and the court gave the jury the correct instruction.

**4. Evidence— polygraph—negligence action—not admissible**

The trial court did not err in a negligence action by refusing to admit evidence from a polygraph test tending to show that plaintiff had lost his sense of taste as alleged. It is well established that polygraph evidence is not admissible in North Carolina trial courts.

**5. Appeal and Error— error in punitive phase only—remand of entire action**

A negligence action was remanded for a new trial on all issues, including liability for compensatory damages, where the jury considered an outside definition of willful and wanton but plaintiff did not assign error to the compensatory damages phase of the trial. N.C.G.S. § 1D-30 is clear in its mandate that the same trier of fact try both the compensatory and punitive phases of the trial and does not provide exceptions. Moreover, remand on the punitive damages issues only would deprive the jury of an opportunity to consider all of the evidence presented during the compensatory phase that bears upon the actual damages suffered by the claimant. N.C.G.S. § 1D-35(2)(e).

Judge TYSON concurring in part and dissenting in part.

Appeal by plaintiff from judgment entered 21 July 1999 and order entered 22 February 2000 by Judge Mark E. Klass in Guilford County Superior Court. Heard in the Court of Appeals 12 September 2001.

*Brooks, Pierce, McLendon, Humphrey, & Leonard, L.L.P., by L.P. McLendon, Jr. and John W. Ormand III, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by H. Lee Evans, Jr. and Jaye E. Bingham, for defendant-appellee.*

HUNTER, Judge.

Ralph Lindsey, Jr. ("plaintiff") appeals the trial court's entry of judgment awarding plaintiff compensatory damages but no punitive damages. Plaintiff also appeals the trial court's order denying his motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial. We remand for a new trial on all issues.

The evidence at trial tended to establish the following facts. On 13 December 1996, plaintiff entered the drive-thru window of the

Skat-Thru owned by Boddie-Noell Enterprises, Inc., d/b/a Hardee's ("defendant") in Reidsville, North Carolina. Plaintiff ordered breakfast and a cup of water, and observed the drive-thru employee, Frankie Settle ("Settle"), pour water into a cup from a pitcher. Settle then handed plaintiff his food and water. After plaintiff received his food, he pulled into the parking lot to eat his breakfast. Plaintiff ate all of his food before taking a drink of water. As plaintiff started to drive away, he removed the top to the cup of water and took a large drink. Plaintiff did not notice anything out of the ordinary about the look or smell of the water, and he did not feel any burning to his tongue as he drank the water. After drinking the water, plaintiff's throat began to burn and he vomited several times. Plaintiff returned to the restaurant and informed the manager, Martha Settle, that something was wrong with the water. The manager drew water from the faucet and tasted it, informing plaintiff that nothing was wrong with the water.

Plaintiff presented evidence showing that the water had contained a chlorine concentration of more than two-hundred parts per million. Plaintiff asserted at trial that the cup of water which he drank contained a sanitizing solution known as Q-25 Alkaline Sanitizer ("sanitizer"). The evidence at trial showed that the sanitizer was usually mixed at the restaurant in water to clean and sanitize the dishes and counters. The water pitchers were cleaned with the sanitizer each night and air dried. The morning shift employees would fill the pitchers with water from the faucet in the morning.

After drinking the water and confronting the manager, plaintiff drove himself to Annie Penn Hospital, taking the partially filled cup with him. Plaintiff left the hospital but returned later that day complaining of throat pain, stomach pain, and shortness of breath. Three days later, on 16 December 1996, plaintiff reported to Urgent Medical Center where it was noted that plaintiff had no sense of taste, was dehydrated, disoriented and that his veins were collapsed. In June of 1997, plaintiff was examined by Dr. Susan Schiffman, a professor at Duke University Medical School. Dr. Schiffman testified that plaintiff suffered a total and permanent loss of his sense of taste. In October of 1998, plaintiff submitted to a taste test by Dr. Beverly Cowart, a research psychologist at Monell Chemical Senses Center in Philadelphia. Dr. Cowart testified by video deposition at trial that plaintiff did not have a complete loss of taste and that her testing could not confirm that plaintiff had a partial loss of taste.

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

Plaintiff filed suit against defendant on 28 August 1997. The compensatory and punitive damages phases were bifurcated upon defendant's motion. The jury found that defendant was negligent and awarded plaintiff $32,500.00 in compensatory damages. Evidence was then heard in the punitive damages phase of the trial by the same jury. The trial court's charge included the definitions of "willful" and "wanton" as set forth in N.C.P.I., Civ. 810.05, and each juror was provided a copy of the jury instructions. During the jury's deliberations, a note from a juror was delivered to the trial court. The note stated:

Your Honor:

I'm writing this note because as of now I'm one of the [ones] having difficulty coming to some conclusion. The reason for this is because of the way the wording in your charge is written.

As I understand, according to your charge we must rule based on the understanding that Boddie-Noell intentionally wronged Mr. Lindsey. This to me says that the only way we can rule is for the defense, because there is no way we can rule for the plaintiff because we can't really prove that the incident was willing and wanton (intentionally).

I said all that to say this. Is it possible to allow us another option?

In response to the note, the trial court stated to the jury, "[y]'all have the charge, and the definition is in that charge of what willful and wanton means, so, that's all I can tell you on that, and there's no other option that I can—you know, that's what the law is, so, you have to go by what's in that charge." At that time, plaintiff's counsel requested that the court instruct the jurors on the definitions of "willful" and "wanton" as set forth in N.C.P.I., Civ. 102.86. The trial court denied the request. The jury returned and awarded no punitive damages to plaintiff.

After the trial, plaintiff filed a motion for JNOV or, in the alternative, a new trial, accompanied by affidavits from four jurors. The affidavits indicated that during deliberations, Juror Couch brought definitions of the words "willful" and "wanton" into the jury room which he had obtained from a dictionary through a computer. The trial court received the affidavits and considered them, and subsequently denied plaintiff's motion. Plaintiff appeals.

Plaintiff has entered eight assignments of error in the record, but has abandoned two of these by failing to raise them in his appellate

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

brief. *See* N.C.R. App. P. 28(b)(5). The remaining assignments of error have been condensed into four arguments for our review: (1) that the trial court erred in denying plaintiff's motion to compel discovery; (2) that the trial court erred in denying plaintiff's motion for JNOV or, in the alternative, a new trial; (3) that the trial court erred by refusing to charge the jury using N.C.P.I., Civ. 102.86; and (4) that the trial court erred by refusing to admit polygraph evidence.

I.

[1] Plaintiff first argues that the trial court erred in denying his motion to compel discovery. Plaintiff filed his complaint on 28 August 1997. Between that time and the commencement of trial on 7 June 1999, plaintiff apparently filed four separate requests for production of documents, although only two have been included in the record. In his fourth request for production of documents, filed 5 May 1999 (approximately twenty months after the complaint was filed and one month before trial), plaintiff requested that defendant produce all documents generated between 1 January 1986 and May of 1999 relating to any incident in which a customer or employee of any Hardee's restaurant owned or operated by defendant claimed to have been served a beverage containing sanitizer. As far as we are able to discern from the record, this fourth request for production was the first time plaintiff specifically requested the production of such documents from this time period.

At the time of this fourth request for production, defendant had already produced documents identifying claims involving beverages containing sanitizer between 1992 and 1997. By response filed 4 June 1999, defendant objected to the request for documents from 1986 through 1999. Three days later, on the day trial was scheduled to commence, 7 June 1999, plaintiff filed a motion to compel defendant to produce additional documents generated from 1990 to 1992, and from 1997 through 1999. The motion was heard by the trial court on 7 June 1999, immediately prior to trial, and the trial court denied the motion. Having reviewed the record on appeal, we are unable to conclude that the trial court abused its discretion in this matter.

"Under the rules governing discovery, a party may obtain discovery concerning any unprivileged matter as long as relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence." *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123 (citing N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (1999) ("Rule 26(b)(1)")), *disc.*

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

*review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). "Whether or not [a] party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Id.*

Plaintiff argues that the trial court erred in denying his motion to compel discovery because the documents which he sought to have defendant produce were relevant to establishing that defendant's conduct was willful and wanton and warranted an award of punitive damages. We agree with plaintiff that the documents sought were relevant to the punitive damages issue. Our General Statutes provide that, in determining the amount of punitive damages, the jury may consider evidence that relates to:

    c. The degree of the defendant's awareness of the probable consequences of its conduct.

    d. The duration of the defendant's conduct.

    . . . .

    g. The existence and frequency of any similar past conduct by the defendant.

N.C. Gen. Stat. § 1D-35(2)(c), (d), (g) (1999). The evidence sought by plaintiff in his motion to compel was relevant to these issues and, therefore, relevant to the issue of punitive damages and reasonably calculated to lead to the discovery of evidence that would have been admissible during the punitive damages phase of the trial.

Nevertheless, we do not believe the trial court abused its discretion in denying the motion to compel given the timing of plaintiff's fourth request for production of documents and the timing of the motion to compel. Rule 26(b)(1) provides that the court may limit the use of discovery methods,

if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

Rule 26(b)(1). Although the record does not indicate that the evidence sought by plaintiff would have been unreasonably cumulative or unduly burdensome for defendant to produce, the record does indicate that plaintiff had "ample opportunity by discovery in the action to obtain the information sought." *Id.*

As noted, plaintiff filed its fourth request for production of documents approximately twenty months after the complaint was filed, and one month before trial was scheduled. In this document, plaintiff requested defendant to produce all documents generated between 1 January 1986 and May of 1999 relating to any incident involving beverages containing sanitizer. Plaintiff failed to request production of such documents in its second request for production, which appears in the record, and we are unable to determine whether plaintiff requested such documents in the first or third requests because these documents have not been included in the record. Presuming, as we must, that plaintiff first requested production of these documents one month prior to trial, and failed to make such a request during the previous twenty months, we cannot say that the trial court abused its discretion in denying the motion to compel.

II.

[2] In his second argument, plaintiff contends that the trial court erred in denying his motion for JNOV or, in the alternative, a new trial. Plaintiff contends that the jury's use of dictionary definitions of the words "willful" and "wanton" was improper, and that this conduct resulted in prejudice to plaintiff. We agree.

As noted above, plaintiff filed a motion for JNOV or, in the alternative, a new trial, accompanied by affidavits from four jurors. The affidavits indicate that during deliberations, Juror Couch brought definitions of the words "willful" and "wanton" into the jury room which he had obtained from a dictionary through a computer. The trial court properly received the affidavits and considered them, pursuant to Rule 606(b) of the North Carolina Rules of Evidence, which provides that the trial court may receive juror testimony as to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." N.C. Gen. Stat. § 8C-1, Rule 606(b) (1999). After considering the affidavits, the trial court denied plaintiff's motion. We believe that the trial court erred because the jury's consideration of the dictionary definitions was improper, and because plaintiff was prejudiced by the jury's improper conduct.

LINDSEY v. BODDIE-NOELL ENTERS., INC.

[147 N.C. App. 166 (2001)]

In North Carolina, as well as in every jurisdiction that has considered the issue, it has been held that it is improper for a jury to consider or rely upon extraneous information, such as definitions found in a dictionary, during deliberations. *See In re Will of Hall*, 252 N.C. 70, 87, 113 S.E.2d 1, 13 (1960) (" '[i]t generally is ground for reversal that the jury obtained and took into the jury room a dictionary which they consulted to determine the meaning of legal or other terms, which they do not understand' " (citation omitted)); *State v. Barnes*, 345 N.C. 184, 226, 481 S.E.2d 44, 67 (1997) ("[c]ourts throughout the United States have generally concluded that a jury's reliance on extraneous sources during deliberations is error"), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998); *State v. McLain*, 10 N.C. App. 146, 148, 177 S.E.2d 742, 743 (1970) ("[i]t was improper for the jury to obtain and read a dictionary definition of one of the offenses charged in the bill of indictment"); *see also* Jean E. Maess, Annotation, *Prejudicial Effect of Jury's Procurement or Use of Book During Deliberations in Civil Cases*, 31 A.L.R.4th 623 (1984). However, even where it is shown that a jury has been improperly influenced by extraneous information, a party challenging the verdict must further show that the jury was prejudiced against him as a result in order to be entitled to relief. *See Pinckney v. Van Damme*, 116 N.C. App. 139, 149, 447 S.E.2d 825, 831 (1994).

Here, the dictionary definitions used by the jury clearly had the potential to prejudice plaintiff. Plaintiff sought punitive damages based on the contention that defendant's conduct was willful and wanton. According to N.C.P.I., Civ. 810.05, willful and wanton conduct "means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage or other harm." According to the dictionary definitions considered by the jury, however, "willful" means "deliberate" or "done on purpose," and "wanton" means "gratuitously cruel; merciless; [m]arked by unprovoked, gratuitous maliciousness." The potential prejudice to plaintiff is clear: it is more difficult to show that a defendant harmed a plaintiff deliberately and "on purpose," and that the defendant acted in a gratuitously cruel and malicious way, than it is to show that a defendant merely acted with an intentional disregard of, or indifference to, a plaintiff's safety.

Moreover, we believe the following factors establish that the use of these definitions did, in fact, prejudice plaintiff in this case. First, during deliberations, Juror Jackson submitted a note to the trial court judge which stated, in part:

As I understand, according to your charge we must rule based on the understanding that [defendant] intentionally wronged [plaintiff]. This to me says that *the only way we can rule is for the defense,* because there is no way we can rule for the plaintiff because we can't really prove that the incident was willing and wanton (intentionally).

(Emphasis added.) Second, according to the juror affidavits, this note was precipitated by the fact that Juror Couch provided to all of the jurors the dictionary definitions at issue, which he had obtained from his computer during a lunch recess. Third, the trial court here did not have an opportunity to instruct the jury to disregard the dictionary definitions because the trial court was unaware until after the trial that the jury had considered these definitions. *See Pinckney,* 116 N.C. App. at 152, 447 S.E.2d at 833 (holding that one factor in determining prejudice resulting from jury consideration of extraneous information is whether trial court instructed jury to consider only matters introduced at trial). Finally, the jury here did not award any punitive damages to plaintiff, despite evidence that similar incidents had occurred on approximately twenty-five separate occasions between 1994 and 1997. We believe these factors indicate that plaintiff was prejudiced in this case and, thus, we hold that the trial court's denial of plaintiff's motion was clearly erroneous and constituted an abuse of discretion. *See id.* at 148, 447 S.E.2d at 831.

In concluding that defendant has failed to show that he was prejudiced, the dissent relies upon *Hall,* 252 N.C. 70, 113 S.E.2d 1, and *McLain,* 10 N.C. App. 146, 177 S.E.2d 742. These cases are distinguishable from the present case. In *Hall,* the Court held that the definition of "undue influence" provided by an encyclopedia and considered by the jury during deliberations was actually more favorable to appellants than the definition applied by North Carolina courts. *See Hall,* 252 N.C. at 88, 113 S.E.2d at 13. The Court concluded that, because the definition could not have prejudiced the appellants, it was not error to deny the appellants' motion to set aside the verdict. *See id.* at 88, 113 S.E.2d at 14. In *McLain,* defendant moved for a new trial on the grounds that the jury considered a dictionary definition of the offense of "uttering" during deliberations. *See McLain,* 10 N.C. App. at 148, 177 S.E.2d at 743. This Court held that the trial court did not err in denying the motion because (1) the trial court specifically instructed the jury before it reached a verdict to disregard the definition taken from the dictionary, and (2) the defendant failed to show that he was prejudiced in any way by the jury's conduct. *Id.*

## III.

**[3]** Plaintiff next argues that the trial court erred by refusing to instruct the jury as to the definitions of "willful" and "wanton" as contained in N.C.P.I., Civ. 102.86. We disagree. It is within the trial court's discretion to determine whether additional instructions are needed to dispel jury confusion. *State v. Prevette*, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986). We review the trial court's decision under an abuse of discretion standard in determining whether the trial court erred in refusing to give plaintiff's requested instruction. *Id.* "It is well settled '[t]he trial court must give the instructions requested, at least in substance, if they are proper and supported by evidence. . . .' " *Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 83 (1995) (citation omitted). "A requested instruction which is not, in its entirety, a correct statement of the law applicable to the evidence may be refused, the court being under no duty to modify or qualify it so as to remedy the defect therein." *King v. Higgins*, 272 N.C. 267, 270, 158 S.E.2d 67, 70 (1967) (holding that the trial court did not err by refusing to give a requested definition that did not apply to the evidence).

Here, the trial court properly refused to instruct the jury using the pattern jury instruction requested by plaintiff. The note which accompanies N.C.P.I., Civ. 102.86 states: "Use this instruction only where an issue as to plaintiff's contributory negligence will be submitted and where the plaintiff seeks to overcome a prospective adverse finding on the issue of contributory negligence by proving defendant's conduct was willful or wanton." (Footnote omitted.) The issue of contributory negligence was not submitted to the jury. Therefore, this jury instruction was not applicable to this case. Moreover, the trial court properly instructed the jury using the definitions of "willful" and "wanton" set forth in N.C.P.I., Civ. 810.05, which is intended to be used for the purpose of determining liability for punitive damages. We hold that the trial court did not abuse its discretion in refusing to instruct the jury using the jury instruction requested by plaintiff.

## IV.

**[4]** In his final argument, plaintiff contends that the trial court erred in refusing to admit evidence from a polygraph test tending to show that plaintiff had lost his sense of taste. Although we are remanding for a new trial on all issues (as discussed below), we briefly address this issue because we believe it is likely to arise again during the new trial. It is well-established that polygraph evidence is not admissible

in North Carolina trial courts. *See State v. Grier*, 307 N.C. 628, 645, 300 S.E.2d 351, 361 (1983) (Court found polygraph evidence inherently unreliable and held that polygraph evidence is no longer admissible in either civil or criminal trials). Thus, the trial court did not err in refusing to admit the polygraph evidence.

## V.

**[5]** Finally, we hold that this case must be remanded for a new trial on all issues. Defendant argues that if a new trial is ordered, it should be limited to the issue of punitive damages only, because plaintiff has not assigned error to the compensatory damages phase of the trial. In general, appellate courts in North Carolina have discretionary authority to determine whether a case should be remanded for a partial new trial. *See, e.g., Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974). However, in this case the compensatory and punitive damages phases of the trial were bifurcated pursuant to section 1D-30 of our General Statutes, which states:

> Upon the motion of a defendant, *the issues of liability for compensatory damages and the amount of compensatory damages*, if any, shall be tried separately from *the issues of liability for punitive damages and the amount of punitive damages*, if any. Evidence relating solely to punitive damages shall not be admissible until the trier of fact has determined that the defendant is liable for compensatory damages and has determined the amount of compensatory damages. *The same trier of fact that tried the issues relating to compensatory damages shall try the issues relating to punitive damages.*

N.C. Gen. Stat. § 1D-30 (1999) (emphasis added). Defendant contends that the final sentence of the statute should not apply, and was not intended to apply, where an appellate court remands a case to the trial court after concluding that there was error in the punitive damages phase of the trial but not in the compensatory damages phase. In support of this argument defendant relies upon an opinion from the Court of Appeals of Minnesota, *Nugent v. Kerr*, 543 N.W.2d 688, 691 (Minn. App. 1996). In *Nugent*, the plaintiff argued that a retrial after remand could not be limited to the issue of punitive damages only because the pertinent statute authorizing separate proceedings for the issues of compensatory and punitive damages required the same trier of fact to determine both compensatory and punitive damages. The court rejected this argument and ordered a new trial on punitive damages only because it concluded that "the issues of liability are

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

uncomplicated and neither party has demonstrated that it would be prejudiced by a retrial on punitive damages alone." *Id.* at 691. However, we believe *Nugent* is unpersuasive because the pertinent statute in that case did not, as our statute does, expressly mandate that the same trier of fact "shall" try both phases of the trial. *See* Minn.Stat. § 549.20, subd. 4 (2000). Our statute is clear in its mandate, and does not provide any exceptions.

Further, we believe that we are required to remand for a new trial on *all* issues, including *liability* for compensatory damages. This conclusion is based upon the language of N.C. Gen. Stat. § 1D-30, which contemplates four issues at trial (liability for compensatory damages, the amount of compensatory damages, liability for punitive damages, and the amount of punitive damages) grouped into two categories ("the issues relating to compensatory damages" and "the issues relating to punitive damages"), and which contemplates that the same trier of fact must try both categories (i.e., all four issues). Therefore, where an appellate court concludes that a case that was bifurcated at trial pursuant to N.C. Gen. Stat. § 1D-30 must be remanded for a new trial on the issues relating to punitive damages, we believe the statute requires that the case must also be remanded for a new trial on the issues of liability for compensatory damages and the amount of compensatory damages, so that the same jury may try all of these issues.

Our interpretation is buttressed by N.C. Gen. Stat. § 1D-35, which provides that the jury, in determining the amount of punitive damages, may consider evidence that relates to a variety of factors, including "[t]he actual damages suffered by the claimant." N.C. Gen. Stat. § 1D-35(2)(e). Were we to remand for a new trial only on the issues relating to punitive damages, the jury would be deprived of an opportunity to consider all of the evidence presented during the compensatory damages phase of the trial that bears upon the actual damages suffered by the claimant.

We remand for a new trial on all issues. We also affirm the trial court's denial of plaintiff's pretrial motion to compel production of documents.

New trial.

Judge WYNN concurs.

Judge TYSON concurs in part and dissents in part in a separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur in parts I, III, IV and V of the majority's opinion. I respectfully dissent from part II of the majority's opinion. Plaintiff fails to show that the trial court manifestly abused its discretion in refusing to grant a new trial.

## II. Extraneous prejudicial information

Plaintiff moved for a new trial pursuant to G.S. § 1A-1, Rule 59(a)(2) on the grounds of jury misconduct. In support of the motion, plaintiff tendered four affidavits from jurors concerning dictionary definitions of "willful" and "wanton" brought into the jury room during deliberations. Plaintiff demands a new trial and argues that these definitions constitute extraneous information which was prejudicial to him.

Appellate review of an order of a trial court granting or denying a new trial pursuant to G.S. § 1A-1, Rule 59 is limited to the question of whether the record discloses a manifest abuse of discretion or that the ruling was clearly erroneous. *Pinckney v. Van Damme*, 116 N.C. App. 139, 447 S.E.2d 825 (1994).

The general rule is that, once rendered, a verdict may not be impeached by the jurors. *See In Re Will of Hall*, 252 N.C. 70, 87-88, 113 S.E.2d 1, 13 (1960) ("It is firmly established in this State that jurors will not be allowed to attack or overthrow their verdicts, nor will evidence from them be received for such purpose.") (citations omitted); *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 222, 230 S.E.2d 380, 389-90 (1976) (jurors will not be allowed by testimony or affidavit to impeach, to attack, or to overthrow their verdicts) (quoting *State v. Hollingsworth*, 263 N.C. 158, 139 S.E.2d 235 (1964)) (citations omitted).

Rule 606(b) of the North Carolina Rules of Evidence creates an exception to the general rule. *Berrier v. Thrift*, 107 N.C. App. 356, 364, 420 S.E.2d 206, 210-11 (1992). Rule 606(b) permits testimony by a juror as to whether extraneous prejudicial information was improperly before the jury. N.C. Gen. Stat. § 8C-1, Rule 606(b) (1999). A juror may not testify as to the subjective effect of the extraneous information upon the jury's decision. *State v. Lyles*, 94 N.C. App. 240, 245, 380 S.E.2d 390, 394 (1989) (citing N.C. Gen. Stat. § 8C-1, Rule 606(b)).

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

Extraneous information is "information dealing with the defendant or the case being tried, which information reaches a juror without being introduced in evidence. It does not include information which a juror has gained in his experience which does not deal with the defendant or the case being tried." *State v. Rosier*, 322 N.C. 826, 832, 370 S.E.2d 359, 363 (1988). No presumption of prejudice arises in a civil action from a showing that extraneous information or perceived extraneous information was improperly brought to the jury's attention. *Pinckney*, 116 N.C. App. at 148, 447 S.E.2d at 831. Plaintiff, as the moving party, must demonstrate "actual" prejudice. *Id.*

The trial court in its findings of fact and conclusions of law stated: "[t]he jury did not ignore the instructions of the Court, nor did it apply extraneous definitions or information in reaching its verdict. Furthermore, while the jury was exposed to the above definitions, the Court finds that this was not 'extraneous information' pursuant to Rule 606, and the Court finds no prejudice to the movant."

I agree with the trial court that the contents of the affidavits in this case do not fall within the exception as extraneous prejudicial information. The definitions do not specifically concern the defendant or the evidence presented in this case. *Rosier*, 322 N.C. at 832, 370 S.E.2d at 363.

The majority opinion states that it is "apparent" that the definitions of "willful" and "wanton" in a case involving a claim for punitive damages constitutes "extraneous information" because they pertain to the case being tried and the governing law at issue. I find that the reading of the dictionary definitions by Juror Couch is analogous to a situation where one of the jurors informs the jury what "willful" and "wanton" mean, according to his knowledge of the English language. The definition of words in our standard dictionaries has been considered a matter of common knowledge which the jury is supposed to possess. *State v. Asherman*, 478 A.2d 227, 252 (Conn. 1984); *Dulaney v. Burns*, 119 So. 21, 25 (Ala. 1928), *rev'd on other grounds*, *Whitten v. Allstate Ins. Co.*, 447 So.2d 655 (Ala. 1984).

The information received in this case does not fall within the definition of extraneous information contemplated by our Supreme Court. *See generally Rosier*, 322 N.C. 826, 370 S.E.2d 359 (1988) (juror affidavit showed that juror watched prohibited program on child abuse, held not extraneous information because the matters reported to the jury did not deal with the defendant or the evidence introduced); *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994)

(affidavits from jurors that they were mistakenly informed about defendant's eligibility for parole, found to be internal influences and not extraneous information); *Berrier*, 107 N.C. App. 356, 420 S.E.2d 206 (1992) (juror affidavits that foreman misinformed them that punitive damages were only a statement of what decedent's life was worth rather than a money judgment, did not fall within the exception as extraneous information). *But See Lyles*, 94 N.C. App. 240, 380 S.E.2d 390 (1989) (writing at bottom of photograph uncovered by juror indicating that defendant was in the area on the date of the crime, held inadmissible evidence which affected defendant's alibi and was extraneous information).

Even if the "willful" and "wanton" definitions were determined to be extraneous information, courts cannot presume prejudice. Plaintiff must also demonstrate that he suffered "actual" prejudice. *Pinckney*, 116 N.C. App. at 148, 447 S.E.2d at 831. The majority's opinion states that the dictionary definitions had the "potential to prejudice the plaintiff." Potential prejudice is not actual prejudice.

Our Supreme Court addressed a similar issue where a juror brought into deliberations an encyclopedia containing the definition for "undue influence." *In Re Will of Hall, supra*. The court stated that "it generally is ground for reversal that the jury obtained and took into the jury room a dictionary which they consulted to determine the meaning of legal or other terms, which they do not understand." *Id.* at 87, 113 S.E.2d at 13. The court held, however, that the definition of "undue influence" did not **prejudice** the caveators and was more favorable to them. *Id.* at 88, 113 S.E.2d at 13.

This Court addressed a similar issue where a juror brought a definition of "uttering" from a dictionary into the jury room during deliberations in a criminal trial. *State v. McLain*, 10 N.C. App. 146, 148, 177 S.E.2d 742, 743 (1970). Although it was improper for the jury to obtain and read the definition, we held that no reversible error had occurred. *Id.* The trial court instructed the jury to disregard the definition and defendant had not shown any **prejudice** by the jury conduct. *Id.*

Other states have addressed the issue of dictionary definitions brought before the jury and found no prejudice. In *State v. Klafta*, 831 P.2d 512 (Haw. 1992), the Supreme Court of Hawaii held that the conduct of three jurors in looking up terms in Black's Law Dictionary was harmless beyond a reasonable doubt where the verdict was not shown to be influenced by the misconduct. The Supreme Court of

**LINDSEY v. BODDIE-NOELL ENTERS., INC.**

[147 N.C. App. 166 (2001)]

Alabama stated that actual prejudice may not be inferred merely from exposure, and found no prejudice where jurors obtained a dictionary definition of "standard." *Pearson v. Fomby By and Through Embry*, 688 So.2d 239, 242-43 (Ala. 1997). The court noted that there was no evidence that any juror stated that the collective decision of the jury had been influenced. *Id.* The Iowa courts have also addressed the issue of jurors looking up dictionary definitions and found no prejudice. *See Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821 (Iowa 1993) (no competent evidence that the misconduct improperly influenced the jury); *In the Matter of Estate of Cory*, 169 N.W.2d 837 (Iowa 1969) (juror looked up and shared the definitions of "undue" and "undue influence" in a will contest case, held the dictionary definitions were no different than the jurors' common knowledge of the terms); *Harris v. Deere & Co.*, 263 N.W.2d 727 (Iowa 1978) (juror looked up "control" and "lever" in a products liability case, held no error in denial of a new trial), *overruled on other grounds, Ryan v. Arneson*, 422 N.W.2d 491 (Iowa 1988).

At bar, it was unknown to the trial court, during deliberations, that the jury had obtained the dictionary definitions. After receiving a question regarding the definitions of "willful" and "wanton," the trial court further instructed the jury "the definition is in that [jury] charge of what willful and wanton means . . . there's no other option . . . that's what the law is, so, you have to go by what's in that charge." The trial court essentially gave the same instruction as given in *McLain*, which this Court held cured any potential prejudice, and that defendant failed to show that he was prejudiced. *McLain*, 10 N.C. App. at 148, 177 S.E.2d at 743. Additionally, the affidavit of Juror Couch, offered by plaintiff, states that upon returning to deliberations, the law contained in the court's instructions was applied.

The majority's opinion lists several factors which it contends establish prejudice to plaintiff. First, the fact that Juror Jackson submitted a note after receipt of the dictionary definitions. This merely indicates that the jury was grappling with the issue of whether defendant's conduct was willful or wanton. Second, the fact that the trial court did not instruct the jury to disregard the definitions. The trial court instructed the jury that they must apply the law and definitions of the jury charge which they had in their possession. Finally, the failure to award any punitive damages despite evidence of twenty-five similar incidents does not establish prejudice. The jury heard evidence of the prior incidents and also testimony from plaintiff that he did not notice that the water looked or smelled any dif-

ferent and did not feel any burning to his tongue as he drank the water. Punitive damages require an element of aggravation which plaintiff has not conclusively shown here. *See Lashlee*, —— N.C. App. ——, ——, 548 S.E.2d 821, 827 (2001) (citation omitted).

The record supports the trial court's finding and conclusion that the jury applied the law and definitions given in the court's instructions, and that plaintiff was not prejudiced. I would affirm the trial court's denial of plaintiff's motion for a new trial. I respectfully dissent from part II of the majority's opinion.